# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Continental Resources, Inc., | ) |
| Plaintiff, | ) **ORDER DENYING PENDING** |
| | ) **MOTIONS** |
| vs. | ) |
| Ricky L. Reems, Linda Reems, and | ) Case No. 1:15-cv-076 |
| McKenzie Electric Cooperative, Inc. | ) |
| Defendants. | ) |

This case is now before the court on several Rule 12 motions brought by defendants Ricky and Linda Reems (collectively the "Reems") and McKenzie Electric Cooperative, Inc. ("McKenzie Electric") against plaintiff Continental Resources, Inc. ("Continental").

## I. BACKGROUND

Continental alleges in its complaint that it drilled and completed seven oil and gas wells on a multi-well pad located in the N½NE¼ of Section 24, T146N, R96W ("subject tract'"). According to Continental, the subject tract is part of a four-section spacing unit established by the North Dakota Industrial Commission that is comprised of Sections 12, 13, 24, and 25 of T146N, R96W. Continental states that it operates other oil and gas producing facilities within the unit.

For its claim against the Reems, Continental asks the court to declare that it, as well as its subcontractors and agents, may enter upon the subject tract "for the purpose of constructing oil pipelines, produced water lines, electric utility lines, and other infrastructure that is reasonably necessary to explore for and produce oil and gas" from the subject tract and lands pooled with the subject tract. Continental alleges that the Reems, who own the surface estate of the subject tract, have threatened Continental with a suit for trespass and for injunctive relief if it proceeds to install

1

one or more of the facilities referenced above, including, specifically, an electrical service line that would run from a McKenzie Electric distribution line paralleling the northern boundary of the subject tract into Continental's multi-well pad, a distance of a mere 125 feet or less. Continental claims that the Reems have taken the position that it cannot install the facilities on the subject tract, including the electrical service line, without first obtaining an express easement from them.

Continental claims it does not need an express easement because it already has the right to install the facilities under an oil and gas lease dated April 22, 2004, that was granted by Ricky L. Reems, as trustee of the Thelma M. Reems Family Mineral Trust, to Continental's predecessor-in-interest. In particular, Continental points to the lease's granting clause which conveys the right to explore and develop the lease property for oil and gas "with rights of way and easements for laying pipe lines and erection of structures thereon." Continental also claims that, in addition to its express and implied rights under the lease, it has acquired the rights of the dominant mineral estate to make reasonable use of the surface of the subject tract for the development of the oil and gas without having to obtain an easement from the Reems and that this includes the right to install the electrical service line.

For its claim against McKenzie Electric, Continental alleges that it is a member of McKenzie Electric, that McKenzie Electric is the only power supplier that lawfully can provide electrical service to the wellsite in question, that McKenzie Electric provides power to a number of its other wellsites, and that Continental has contributed millions of dollars to help McKenzie Electric build out its electrical system in anticipation that McKenzie Electric would provide it with electrical service. Continental alleges that, in this instance, McKenzie Electric has refused to provide electrical service to the wellsite, taking the position that it will not do so in the absence of the Reems

granting an express easement that Continental contends is not required. Continental alleges McKenzie Electric's refusal to provide service in this instance is "unreasonable, arbitrary, and in violation of North Dakota." Finally, Continental alleges that, under North Dakota law, "Continental is entitled to adequate, convenient, just, and reasonable electric service from MEC [McKenzie Electric] without any unjust discrimination or preference" and that it is entitled to injunctive relief ordering McKenzie Electric to provide that service to its wellsite.

## II. DISCUSSION

### A. The motions to dismiss for lack of subject matter jurisdiction

The Reems and McKenzie County have both moved pursuant to Fed. R. Civ. P. 12(b)(1) for dismissal of this action for lack of subject matter jurisdiction. They contend that dismissal is required because the amount-in-controversy is less than the $75,000 threshold under 28 U.S.C. § 1332 for jurisdiction based upon diversity of citizenship, which is the only jurisdictional grounds relied upon by Continental for this action.

In its complaint, Continental alleges that the value of the rights it is seeking to have declared and enforced exceeds $75,000. After the Reems and McKenzie County filed their motions to dismiss challenging this allegation, Continental filed an affidavit from one of its engineers providing more detail. Included within that affidavit is information which indicates that the additional cost to Continental of having to run either diesel or natural gas generators at the wellsite to generate electricity, in lieu of using electricity supplied by McKenzie Electric, would result in increased monthly operating costs that would exceed $75,000 within a month or two. Continental also claims that, in addition to these direct costs, there are other costs associated with using diesel or natural gas generators that are more difficult to quantify, including additional environmental permitting costs,

lack of efficiency in production resulting from the use of generators, and the risk that the generators are more prone to fail resulting in potentially significant downtime and increased oil and gas production costs.

While defendants make several arguments for why Continental has failed to demonstrate an amount-in-controversy reaching the requisite threshold, the only one that is deserving of discussion is their contention that this court should look to what Continental offered to pay the Reems for surface and disruption damages for the electrical service line and two underground pipelines pursuant to N.D.C.C. ch. 38-11.1 and what the Reems claim they demanded in exchange for an easements for the three lines. According to the Reems, Continental offered a total of $1,785 for all three lines and that they were willing to grant easements for all three for $11,796.00. Also, the Reems further contend that the two pipelines have already been installed, so the only real issue with respect to Continental's request for declaratory and injunctive relief is the electrical line. Hence, according to both defendants, the actual amount-in-controversy for the electrical line is something less than the $11,796.00 the Reems demanded for all three easements.

Even if all of what the Reems contend is accurate,[1] it would not make a difference. This is because, in actions for declaratory or injunctive relief where the amount-in-controversy is sometimes difficult to determine, the Eighth Circuit has instructed that the court must look to the value of the right that is at issue with the value to be determined from the plaintiff's perspective. See, e.g., Usery v. Andarko Petroleum Corp., 606 F.3d 107, 1018 (8th Cir. 2010) ("We have held repeatedly that in a suit for declaratory or injunctive relief the amount in controversy is the value to the plaintiff of the

---

[1] Continental disputes this was the course of the negotiations, contending that the Reems demanded that it pay $300,000 to resolve all of the disputes between the Reems and Continental (which apparently involve more than the two pipelines and electrical transmission line) before the Reems would grant an express easement for the transmission line.

4

right that is in issue."). And here, defendants gloss over the fact that the Reems have taken the position that Continental and its contractors and agents do not have the right to be on their property for the purposes of installing and operating the electrical line and have threatened to sue for trespass if they enter for that purpose.

From Continental's perspective, the value of the right it is seeking to enforce is obviously not the amount the Reems are demanding for an express easement since Continental is claiming that it has the right to install and operate the transmission line without first acquiring an express easement from the Reems on their terms. Nor is the value to Continental what it may later have to pay for surface damages and disruption pursuant to N.D.C.C. ch. 38-11.1 if it is successful because defendants are claiming that it does not possess the right it is seeking to have declared. Rather, in this instance, the value to is what it will cost to operate in the absence of being able to enforce its claimed right, which here is the cost of generating its own power. And, with respect to that amount, Continental has sufficiently demonstrated it is likely to exceed the jurisdictional threshold.[2] Cf., e.g., Glenwood Light & Water Company v. Mutual Light, Heat, & Power Company, 239 U.S. 121, 124-26 (1915) (the amount-in-controversy in an action by a power company seeking to retrain its competitor from interfering with its power lines was the increased operating costs resulting from the interference to plaintiff's business and not the costs that would be incurred by defendant to alleviate the conflicts); Enbridge Pipelines (Illinois) L.L.C. v. Moore, 633 F.3d 602, 605 (7th Cir. 2011) (the amount-in-controversy in an action by plaintiff pipeline company seeking a declaration that its

---

[2] The situation would likely be different if the Reems had allowed Continental to install the electrical line and Continental's suit was merely for a declaration of the amount it must pay for surface and disruption damage pursuant to N.D.C.C. ch. 38-11.1. In that instance, Continental likely would not be able to reach the jurisdictional threshold since the amount it would have to pay for surface damage and disruption for a 125 feet electrical service line is likely not going to be very great, particularly if it will be buried as the photograph attached to its complaint seems to suggest.

pipeline easements were still in force, which was disputed by defendants, was plaintiff's cost to build a new pipeline around defendant's property).

**B.     McKenzie Electric's separate 12(b)(6) motion**

McKenzie Electric has separately moved to dismiss on the additional ground that Continental's complaint fails to state a claim. But here, numerous facts are pled, including where the wellsite is located, the fact it is owned by Continental, and that it is within McKenzie Electric's service area. Further, Continental alleges with particularity that: (1) it is a member of McKenzie Electric; (2) McKenzie Electric has acted arbitrarily and unreasonably in failing to provide it with service; and (3) McKenzie Electric has an obligation under North Dakota law to provide service that is "adequate, convenient, just, and reasonable and without any unjust discrimination or preference." Collectively, these allegations state a claim that is facially plausible. See, e.g., Zayed v. Associated Bank, N.A., 779 F.3d 727, 732 (8th Cir. 2015) (discussing what is required to state claim under Fed. R. Civ. P. 8(a)).[3]

---

[3] McKenzie Electric complains that Continental's complaint fails to cite to any particular provision of North Dakota law. The quoted language set forth above, however, is directly from N.D.C.C. § 49-04-01, which sets forth the obligation of a "public utility" to provide service under North Dakota law. And, while there appears to be a substantial question whether this section applies to McKenzie Electric as a rural electric cooperative (see Lill v. Cavalier Rural Elec. Co-op, Inc., 456 N.W.2d 527, 529 (N.D. 1990)), McKenzie Electric has made no effort to address that point, and it is one that is not readily resolvable from the face of either § 49-04-01 or the remainder of Title 49 (cf. 2000 N.D. Op. Att'y Gen. L-81, 2000 WL 712811 (May 22, 2000 letter to PSC Commissioner Bruce Hagen)). Also, while perhaps less clear, fairly encompassed within Continental's allegations is the contention that its membership in McKenzie Electric entitles it to service that is reasonable and not unjustly discriminatory from that afforded to the cooperative's other members under North Dakota's laws governing cooperatives. Cf. Lill v. Cavalier Rural Elec. Co-op, supra (concluding in a suit brought by a member against an electric cooperative that the cooperative's imposition of a reconnection charge was not discriminatory and was otherwise within the discretion of the cooperative's governing board under the prudent business-judgment rule); Choctaw Electric Cooperative v. Redman, 293 P.2d 564 (Okla. 1956) (awarding judgment against a rural electric cooperative based on a claim of failure to provide service under Oklahoma cooperative law). Under these circumstances, the better approach here is to deny the motion to dismiss for failure to state a claim and address what may or may not be any legal impediments to Continental's claim against McKenzie Electric by a later dispositive motion upon more complete briefing. See Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1357 (2004).

### C. McKenzie Electric's separate Rule 12(f) motion to strike

McKenzie's Electric has also moved to strike several allegations in Continental's complaint, including the amount of money it has paid to McKenzie Electric to help build out its system. While one or more of these allegations *may* be of questionable relevancy, none are scandalous or impertinent. This motion too is denied. BJC Health System v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007) ("Judges enjoy liberal discretion to strike pleadings under Rule 12(f). * * * * Striking a party's pleading, however, is an extreme and disfavored measure.").

### III. ORDER

Based on the foregoing, the motions to dismiss filed by McKenzie Electric (Doc. No. 11) and by the Reems (Doc. No. 24) are **DENIED**.

**IT IS SO ORDERED**.

Dated this 6th day of January, 2015.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court