**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Continental Resources, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING CONTINENTAL'S** |
| | ) | **MOTION FOR PARTIAL SUMMARY** |
| vs. | ) | **JUDGMENT AND DENYING THE** |
| | ) | **MOTIONS TO DISMISS AND FOR** |
| Ricky L. Reems, Linda Reems, and | ) | **PARTIAL SUMMARY JUDGMENT** |
| McKenzie Electric Cooperative, Inc. | ) | **BY THE REEMS** |
| | ) | |
| | ) | Case No. 1-15-cv-76 |
| Defendants. | ) | |

This case is back before the court on two motions. The first is a renewed motion to dismiss for lack of subject matter jurisdiction or, in the alternative, for partial summary judgment brought by defendants Ricky and Linda Reems (collectively the "Reems"). The second is a partial motion for summary judgment brought by plaintiff Continental Resources, Inc. ("Continental") which asks that the court declare that it, as well as its subcontractors and agents, may enter upon the property that is owned by the Reems and at issue in this case "for the purpose of constructing oil pipelines, produced water lines, electric utility lines, and other infrastructure that is reasonably necessary to explore for and produce oil and gas . . . . "

Earlier this court had denied motions to dismiss for lack of subject matter jurisdiction brought by the Reems and McKenzie Electric Cooperative, Inc. ("McKenzie Electric") as well as a separate motion by McKenzie Electric for dismissal of Continental's complaint for failure to state a claim as to it. Continental Resources, Inc. v. Reems, No. 1:15-cv-076, 2016 WL 75055, 2016 U.S. Dist. LEXIS 2249 (D.N.D. January 6, 2016) ("Reems").

The present motions do not address Continental's claim against McKenzie Electric, nor has McKenzie Electric weighed in on the present motions.

I.     **BACKGROUND**

The Reems are the owners of the surface estate of real property, located in Dunn County, North Dakota, and described as follows:

Township 146 North, Range 96 West:
Section 24: N/2NE/4

(the "subject lands").

On or about August 9, 2004, defendant Ricky L. Reems, as Trustee of the Thelma M. Reems Family Mineral Trust ("Trust"), executed an Oil and Gas Lease (the "Trust Lease"), granting Diamond Resources, Inc. the exclusive right to explore for and produce oil and gas from the subject lands and other property.[1]  On April 14, 2005, but effective as of the date the Trust Lease was executed, Diamond Resources, Inc. assigned the Trust Lease to Continental.

The subject tract is included within a four-section spacing unit comprised of Sections 12, 13, 24, and 25, Township 146 North, Range 96 West, Dunn County, North Dakota.  All of the interests in this unit have been force-pooled by order of the North Dakota Industrial Commission. Continental is the operator of this unit.

Continental has drilled and completed seven oil and gas wells (the Oakdale and Ryden wells) on a multi-well pad (the Oakdale-Ryden well pad) located on the subject tract.  Part of what

---

[1]  The Reems have not contested that the Trust owned an interest in the oil and gas underlying the subject lands at the time it granted the Trust Lease.  It also appears that the mineral estate had been severed from the surface estate prior to the Trust granting the lease.  The significance of this is addressed later.

is in dispute in this case is the right of Continental to install an underground electrical service line that would run from a McKenzie Electric distribution line (which parallels the northern boundary of the subject tract) into the Oakdale-Ryden well pad, a distance of a mere 125 feet or less, as well as the right to install two underground pipelines, one to convey produced oil and the other to haul away contaminated water generated from oil recovery operations ("production water").

When the court considered the earlier motions to dismiss, the two pipelines had already been installed but the electrical service line had not. It appears that this remains the state of affairs - at least as of the time of the filing of present motions.

## II.     DISCUSSION

### A.     The renewed motion to dismiss for lack of subject matter jurisdiction

The Reems appear to make two arguments for why the amount in controversy does not exceed the $75,000 jurisdictional threshold. The first is that the court legally got it wrong the first time it ruled on the issue. In so contending, the Reems rehash their earlier argument that the amount in controversy is what a jury would determine to be the value of the easements that they claim Continental needs to obtain from the them (ignoring that Continental seeks a declaratory ruling that it does not need to acquire express easements for the uses at issue) and that the amount a jury could reasonably award would not come anywhere close to the threshold amount. In support, the Reems point to the negotiations between the parties prior to the commencement of this action, including the fact that even the highest amount demanded by the Reems was substantially less than the threshold.

The court rejects this argument for the same reasons it did earlier. At the time of the commencement of this action, the Reems had taken the position that Continental did not have the

right to be on the subject tract for purposes of installing the two pipelines or for installing an electrical service line absent Continental securing from them one or more express easements and had threatened Continental with an action for trespass. In view of this, the court concluded that Continental's action was not patently specious and, because this was an action for declaratory judgment, the court was required under governing Eighth Circuit case law to consider the value of the rights that Continental was seeking to have declared from its perspective for purposes of determining whether the jurisdictional threshold amount had been reached. Reems, 2016 WL 75055, at *2; see, e.g., Usery v. Anadarko Petroleum Corp., 606 F.3d 1017, 1018 (8th Cir. 2010) ("We have held repeatedly that in a suit for declaratory or injunctive relief the amount in controversy is the value to the plaintiff of the right that is in issue."). And, based on the evidence that Continental proffered and was deemed to be credible, the court concluded that Continental had demonstrated an amount in controversy from its perspective that exceeded the threshold amount. Reems, 2016 WL 75055, at *3.

The second reason that the Reems appear to be advancing (although perhaps not stated exactly in this fashion) is that the court misunderstood the Reems' intentions and that those have now been made clear by an additional affidavit in which they claim they never intended to interfere with the installation of the electrical line, either physically or by attempting to obtain an injunction, pointing to the fact that they stood by while the two pipelines were installed. There are two problems with this argument. The first is that this was not at all clear when Continental filed its action. Rather, as the court determined earlier, the Reems had threatened Continental with a claim for trespass and the Reems had not unequivocally taken off the table the possibility that they might seek injunctive relief despite what they now claim. And with that, the problem for the Reems

now is that this court was required to determine the amount in controversy as of the time the action was commenced (which the court did based on the circumstanced then existing), and subsequent events as they might affect the amount in controversy generally do not divest the court of jurisdiction.  E.g., Scottsdale Ins. Co. v. Universal Crop Protection Alliance, LLC, 620 F.3d 926, 931 (8th Cir. 2010); ("It is well established that the requirements for diversity jurisdiction must be satisfied only with respect to the time of filing.  [citation omitted]  Subsequent events reducing the amount in controversy do not destroy diversity jurisdiction. [citation omitted] Subsequent events may, however, be relevant to prove the existence or nonexistence of diversity jurisdiction at the time of filing. [citation omitted]"); see generally 14A Federal Practice and Procedure:  Jurisdiction § 3702 (4th ed. April 2016 update).

The second problem with the contention that the court should reconsider the question of jurisdiction  based on the purported clarification by the Reems of their intent is that they (1) continue to take the position that Continental does not have the right to use the subject tract for two the pipelines or an electrical service line by virtue of its rights as an assignee of the lessee under the Trust Lease (which is what Continental seeks to have declared); and (2) continue to assert that they can sue for trespass absent Continental having acquired one or more express easements from them for the pipelines and the electrical service line.  In fact, since the court's earlier denial of the motions to dismiss, the Reems have counterclaimed for trespass.

Consequently, even if the court is wrong in restricting its consideration to what the circumstances were at the time of the filing of the action in determining the amount in controversy, the situation has not materially changed.  Even though the Reems now state that they will not interfere with the installation of the electrical service line (either physically or by seeking an

injunction) the court can understand Continental not wanting to proceed so long it yet may be at risk for a claim of trespass with all that such a claim might possibly entail. This leaves the court with having to consider the value of Continental's rights in determining whether the threshold for the amount in controversy has been reached and the court has already determined it has based just on what the immediate increased costs to Continental are by having to generate its electricity on site ( as opposed to obtaining electrical service from a utility) and without even considering the increased costs of operating without the pipelines. Reems, 2016 WL 75055, at 3 (citing Glenwood Light & Water Company v. Mutual Light, Heat, & Power Company, 239 U.S. 121, 124-26 (1915) (the amount-in-controversy in an action by a power company seeking to restrain its competitor from interfering with its power lines was the increased operating costs resulting from the interference to plaintiff's business and not the costs that would be incurred by defendant to alleviate the conflicts) and Enbridge Pipelines (Illinois) L.L.C. v. Moore, 633 F.3d 602, 605 (7th Cir. 2011) (the amount-in-controversy in an action by plaintiff pipeline company seeking a declaration that its pipeline easements were still in force, which was disputed by defendants, was plaintiff's cost to build a new pipeline around defendant's property)).[2]

---

[2] But, even if the court was wrong in looking to Continental's costs of operation, Continental still faced a claim for damages for trespass. Under North Dakota law, this potentially could include an award of punitive damages of up to $250,000 or twice the amount of the general damages, whichever is greater. N.D.C.C. § 32-03.2-11(4) (setting forth the amounts that can be awarded for punitive damages).

The Reems have been coyly silent about whether or not they would seek punitive damages and it was not inconceivable under the circumstances existing at the time this action was filed that a jury could award punitive damages in an amount that would result in the jurisdictional threshold being reached, particularly when coupled with an award of general damages. Further, even now with the Reems' "clarification" that they never intended to obstruct installation of the electrical service one and, presumably also, not seek removal of the two pipelines, the court is not prepared to conclude there is no possibility of a punitive damages award even though any such claim arguably is weaker. In fact, the Reems

In short, this would be a different case if the Reems had agreed that Continental has the right to be on their property for the uses that are the subject of this case and that the only issue is the amount of compensation that must be paid for that use under North Dakota's Surface Owner Protection Act, codified at N.D.C.C. ch. 38-11.1. If that was the issue and the Reems were not taking the position that Continental's occupation amounts to a trespass, the court would agree that the amount in controversy between the parties would be less than the threshold amount, but then, of course, Continental would not have a claim for declaratory relief.[3]

**B.    The cross-motions for partial summary judgment**

> **1.    Continental did not lose its implied right to use the Reems surface estate for the uses at issue for failing to have included them in a notice to the Reems under N.D.C.C. § 38-11.1-04.1(2) prior to the drilling of the Oakdale and Ryden wells**

---

are now seeking in a counterclaim treble damages for forcible ejectment under N.D.C.C. § 32-03-09 and the elements for that relief may intersect with proof of oppression, fraud, or actual malice that is required for an award of punitive damages under § 32-03.2-11. And, while the Reems have not yet sought punitive damages, that may simply be a function of the state law (which this court follows in diversity cases) that does not permit the pleading of punitive damages initially and requires a motion to amend supported by a prima facie showing.

Also, given the determination that the threshold amount has been reached for purposes of diversity jurisdiction over Continental's claim against the Reems, there has been no need for the court to consider Continental's alternative argument for jurisdiction. Continental's alternative argument is that the threshold amount has been reached for its claim against McKenzie Electric and that the court also has supplemental jurisdiction over its claim against the Reems.

[3] The Reems argue that the court's approach here conflicts with what the court did in Hodenfield v. Continental Resources, Inc., No. 4:13-CV-128, Doc. No. 23 (D.N.D. January 21, 2014) (unpublished opinion) and Krenz v. XTO Energy, Inc., 770 F. Supp.2d 1011, 1015 (D.N.D. 2011). Those cases came before the court in a different posture, however. Both were suits initiated by landowners and the court was required under governing Eighth Circuit case law to determine the amount in controversy from their perspective as plaintiffs.

North Dakota, like many other states, has long held that the severed mineral estate is dominant over the surface estate. See, e.g., Hunt Oil Co. v. Kerbaugh, 283 N.W.2d 131, 135 (N.D.1979) ("[T]he surface estate is servient in the sense it is charged with the servitude for those essential rights of the mineral estate.") ("Kerbaugh"); see generally Kartch v. EOG Resources, Inc., No. 4:10–cv–014, 2010 WL 4260103, at *1 (D.N.D. Oct. 22, 2010) (citing the North Dakota cases) ("Kartch"). Under this principle, Continental, as an assignee of an oil and gas lessee's interest in the mineral rights, possesses "an implied right to use as much of the surface as reasonably necessary in exploring, mining, removing, and marketing minerals." Sagebrush Resources, LLC v. Peterson, 2014 ND 3, ¶ 22, 841 N.W.2d 705, 713-14 (citing Kerbaugh, 283 N.W.2d at 137).[4]

The Reems contend that the passage of N.D.C.C. ch. 38-11.1 changed this. Focusing upon the language of N.D.C.C. § 38-11.1-04.1(2) and its requirement that a mineral developer give the

---

[4] Continental at one point in its briefing pointed to the fact that the Trust Lease has language purporting to grant Continental the right to use the subject lands for "rights of way and easements for laying pipe lines, and erection of structures thereon to produce, save and take care of said [oil and gas]" and contended that this was an express grant of the right to use the surface for the purposes at issue. The problem with this, however, is that it appears the Trust no longer owned the surface estate when it granted the Trust Lease. Later, Continental appears to have shifted its argument and now contends that, when the mineral estate was severed from the surface estate by a mineral reservation, the mineral owner reserved the "right of ingress and egress." However, this appears to have been nothing more than a reservation of the implied rights of ingress and egress that accrue to the dominant mineral estate. Further, even if it meant something more, the exercise of the rights of ingress and egress most likely would still be subject to the accommodation doctrine discussed later - at least absent some specificity in the reservation with respect to where and how much of the surface is subject to it. Cf. Mosser v. Denbury, 112 F. Supp. 3d 906, 914-17 & n.7 (D.N.D. 2015).

surface owner written notice of "the oil and gas drilling operations contemplated" at least twenty days before commencement of the drilling operations, the Reems argue that a mineral developer can only make use of the surface for a particular use if it has identified the use in a notice prior to drilling. And, if the mineral developer fails to include a particular use in a pre-drilling notice, whatever implied rights the mineral developer may have to use the surface for that use is lost with the consequence being that the mineral owner needs to obtain an express easement to be able to use the surface for the use for which notice was not given.

In addressing this argument, the court must follow North Dakota's law with respect to the construction of its statutes. <u>Roubideaux v. North Dakota Dept. of Corrections and Rehabilitation</u>, 570 F.3d 966, 972 (8th Cir.2009) (a federal court looks to state law for the law governing the construction of state statutes). The state law on that subject has been succinctly summarized by the North Dakota Supreme Court in <u>Locken v. Locken</u>, 2011 ND 90, 797 N.W.2d 301, as follows:

Our primary objective in interpreting a statute is to determine the legislature's intent, and we initially look to the language of the statute to determine intent. [Schmidt v. Gateway Cmty. Fellowship, 2010 ND 69, ¶ 14, 781 N.W.2d 200]. Words in a statute are given their plain, ordinary, and commonly understood meaning, unless they are defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07. The letter of a statute cannot be disregarded under the pretext of pursuing its spirit when the language of the statute is clear and unambiguous. N.D.C.C. § 1–02–05. "[I]f the language of a statute is ambiguous or of doubtful meaning or if adherence to the strict letter of the statute would lead to an absurd or ludicrous result, the court may resort to extrinsic aids to interpret the statute." Stutsman County v. State Historical Soc'y, 371 N.W.2d 321, 325 (N.D.1985). " 'A statute is ambiguous if it is susceptible to different, rational meanings.' " Sauby v. City of Fargo, 2008 ND 60, ¶ 8, 747 N.W.2d 65 (quoting Simon v. Simon, 2006 ND 29, ¶ 12, 709 N.W.2d 4). Section 1–02–39, N.D.C.C., lists extrinsic aids for construing ambiguous statutes:

If a statute is ambiguous, the court, in determining the intention of the legislation, may consider among other matters:

1. The object sought to be attained.
2. The circumstances under which the statute was enacted.
3. The legislative history.
4. The common law or former statutory provisions, including laws upon the same or similar subjects.
5. The consequences of a particular construction.
6. The administrative construction of the statute.
7. The preamble.

Id. at ¶ 9.

Focusing only upon the text of ch. 38-11.1, the interpretation that the Reems advance is not the most plausible given that the same section that requires a pre-drilling notice (at least in certain circumstances) also provides for what happens when the requisite notice is not given as follows:

4. If a mineral developer fails to give notice as provided in this section, the surface owner may seek appropriate relief in the court of proper jurisdiction and may receive punitive as well as actual damages.

N.D.C.C. § 38-11.1-04.1(4). Given this, it is unlikely that the statute also contemplates as a consequence that the failure to give notice of a particular use in a pre-drilling notice forever deprives the mineral developer of its implied right to use the surface for that purpose. In other words, if that was what the statute intended, it would have so stated along with the provision for

general and punitive damages.[5]  Cf. State v. Hirschkorn, 2016 ND 117, ¶ 10,  6881 N.W.2d 244 (concluding that a statute's inclusion of specific provisions conveyed an intent not to include others not specifically mentioned); Sanderson v. Walsh Cty., 2006 ND 83, ¶ 16, 712 N.W.2d 842 ("We also consider the actual language, its connection with other clauses, and the words or expressions which obviously are by design omitted. In construing statutes and rules, the law is what is said, not what is unsaid, and the mention of one thing implies exclusion of another.") (internal quotations and citations omitted).

But, even if the Reems' proffered construction is not foreclosed for that reason, there are more plausible interpretations of the relevant statutory language.  As noted above, the notice required under§ 38-11.1-04.1(2) is for "drilling operations," which is defined in § 38-11.1-03(2) to mean "the drilling of an oil and gas well and the production and completion operations ensuing from the drilling . . . ."  Also, § 38-11.1-04.1(2) uses the word "contemplated."

A more plausible interpretation of the relevant language is that notice must be given before any particular use that falls within the definition of "drilling operations" but there is no requirement that only one notice can be given and that it must include all potential future uses.  In other words, there is nothing that prohibits giving separate notices for each use that falls within the definition of "drilling operations," including, but not limited to, those that might arise after a well is drilled and completed.  Consequently, even if "drilling operations" is broadly construed to include the two pipelines and the electrical service line in this case, all that § 38-11.1-04.1(2) requires is that

---

[5]  Nor does the court believe that divestment of an implied right to use the surface is somehow included within § 38-11.1-04.1(4)'s reference to "appropriate relief." The most straightforward construction of subsection 4 is that it defines "appropriate relief" to be actual and punitive damages, which would be in addition to the ability of a court to enjoin a violation of the law by prohibiting a mineral developer from proceeding forward until the appropriate notice is given.

Continental give the requisite advance notice for these intended uses (which it appears Continental did) but that it was not required to have included these uses in the notice that was provided prior to the drilling of the wells on the subject tract.[6]

Also, if one goes beyond the relevant statutory language, there is little to support the construction proffered by the Reems when considering either the circumstances under which ch 38-11.1 was adopted or what it appears to be its principal purpose. Prior to the adoption of ch. 38-11.1, there was a widespread belief that a severed mineral interest owner not only had the right to access and use the surface, but also did not have to pay compensation so long as the access and use were reasonably necessary for the development of the minerals. See, e.g., Murphy v. Amoco Production Co., 729 F.2d 552, 554–556 & n. 3 (8th Cir.1984) (upholding the constitutionality of ch. 38–11.1 and discussing the common law principles at the time of its adoption); Kerbaugh, 283 N.W.2d at 135 & n. 4 (discussing the generally accepted view that a surface owner has no claim for damages for the reasonable use of the surface estate by the owners of the severed mineral estate or their lessees, but questioning the social desirability of such a rule and leaving open the issue of whether surface owners are entitled to compensation); Ronald W. Polston, Surface Rights of Mineral Owners What Happens when Judges Make Laws and Nobody Listens?, 63 N.D. L. Rev. 41, 42 (1987) ("Under the traditional rule, the mineral owner has no obligation to pay the surface

---

[6]  Another possible interpretation of the statutory language is that the notice required by § 38-11.1-04.1(2) is limited to only those operations that are necessarily required for the drilling and completion of an oil and gas well and does not extend to other uses of the surface that would be within the rights of the mineral developer or those that might arise later. Narrowly construing "drilling operations" in this fashion would exclude the uses in question in this case from having to be included in any notice prior to drilling. But, while this interpretation is more plausible than the one offered by the Reems, the better construction in terms of fulfilling the purpose of the statute may be to broadly construe "drilling operations" as encompassing all uses so that advance notice is required in each instance.

owner for the reasonable amount of surface consumed in the development of the mineral estate."); William P. Pearce, <u>Surface Damages and the Oil and Gas Operator in North Dakota</u>, 58 N.D. L. Rev. 458, 474 (1982) ("The fact that the lessee has a legally protected right to such surface use means that his acts will not expose him to liability for damages."); <u>see also</u> <u>Kartch</u>, 2010 WL 4260103, at *2. When looking at what ch. 38-11.1 does and considered in this context, it is clear that its principal purpose was to correct the perceived inequity of the mineral developer not being required to pay for use of the surface by requiring that compensation be paid in accordance with the chapter. <u>See id.</u> In fact, the legislature stated as much when it said as part of its legislative findings in § 38-11.1-01, the following:

> 3.    Owners of the surface estate and other persons should be justly compensated for injury to their persons or property and interference with the use of their property occasioned by oil and gas development.

There is little indication however (even in the more general expressions of legislative intent set forth in § 38-11.1-01) that the state legislature intended to alter the application of the general principle that the mineral developer has the implied right to use as much of the surface as reasonably necessary for uses connected with mineral exploration, development, and marketing by limiting the exercise of those rights only to when notice was given prior the drilling of a well. Rather, it appears the notice requirement was intended to be a procedural mechanism that sets in motion the process for determining the compensation to be paid as required by the chapter as well as to ensure that the surface owner is sufficiently informed of the intended use but that any failure to comply with the notice requirement would give rise only to the stated penalties of general and punitive damages as well as the likely ability of a court to enjoin any use for which notice is required but was not given until the notice requirement has been satisfied.

In short, the court rejects the construction of ch. 38-11.1 advanced by the Reems. That is, Continental was not divested of its implied right to use the subject tract for the uses at issue in this case by not having included these facilities in a notice prior to the drilling of the wells on the subject tract.

      **2.**        **The Reems have failed to demonstrate that they have a surface use that warrants accommodation**

Although the court concludes that Continental did not lose its implied right to use the surface for the purposes at issue by failing to have given notice of the uses prior to drilling, the Reems correctly point out that the exercise by Continental of any implied rights is still subject to the "accommodation doctrine" as adopted by the North Dakota Supreme Court in <u>Kerbaugh</u>. However, in relying upon the accommodation doctrine, it is not enough for the Reems to demonstrate that Continental has alternatives, *i.e.*, trucking the oil and production water as an alternative to the pipelines or using onsite generators instead of an electrical service line. Rather, they must also point to their uses of the surface that warrant reasonable accommodation. <u>See</u> <u>Kerbaugh</u>, 283 N.W.2d at 135-38. This they have not done in response to Continental's motion for summary judgment. Most likely, this is because the two underground pipelines (which have already been installed and the Reems now profess not to complain about except for the price for an express easement) do not unduly interfere with any existing uses and that the same would be true for the electrical service line that also would be buried.[7]

---

[7] It is well within the general knowledge of the court (and Continental has otherwise made a sufficient record showing to establish it) that the use of pipelines to convey oil and production water is common in the industry and a reasonable use of the surface - at least insofar as the pipelines offer sufficient protection from failure - a point the Reems have not raised. The same is true for electrical service lines. In fact, it is the court's experience from dealing with other cases that some surface owners living in the area of producing wells prefer pipelines over the constant truck traffic required to haul away oil and

In short, the Reems have failed to come forward with sufficient evidence to sustain their argument for reasonable accommodation.

### 3. Conclusion re the cross-motions for summary judgment

Based on the foregoing, Continental is entitled to a declaration that it has the implied right as an assignee of the lessee's interest under the Trust Lease to maintain and operate the pipelines at issue that already have been installed  as well as the proposed electrical service line provided that it is installed as has been represented by Continental in this case in terms of it being buried and its approximate route.[8]  For the same reasons, the Reems' motion for partial summary judgment to declare the contrary will be denied.

## III. ORDER

Continental's motion for partial summary judgment (Doc. No. 40) is **GRANTED** to the extent that it is entitled to the following declaration:

1. Continental has the implied right as an assignee of the lessee's interest under the Trust Lease to use the Reems' surface estate for the pipelines for conveying oil and production water that have already been installed on the subject tract, so long as those pipelines are used by Continental in connection with the production and marketing of oil and gas from minerals underlying the subject tract or any

---

production water and electrical service lines over noisy and fume-emitting diesel electrical generators. Moreover, it is clear from the correspondence between the parties leading up to the filing of this action that the Reems' real complaint is over the money that was being offered by Continental.

[8]  In its motion, Continental seeks a declaration that it has the right to enter the subject tract "for the purpose of constructing oil pipelines, produced water lines, electric utility lines, and other infrastructure." That is too broad.  Given the accommodation doctrine, the court will only address specific uses that are sufficiently defined in terms of their location and other burdens.

governmentally approved production unit that includes the subject tract, subject to any claim for compensation that the Reems may have under N.D.C.C. ch. 38-11.1 for use of the subject tract for those purposes or liability under other provisions of North Dakota statutory or common law if Continental has exceeded its implied rights.

2.    Continental has the implied right as an assignee of the lessee's interest under the Trust Lease to use the Reems' surface estate to install, maintain, and operate a buried electrical service line to provide power to the Oakdale-Ryden well pad on the subject tract that would run from McKenzie Electric's distribution line to the well pad a distance of approximately 125' along the course generally set forth in Exhibit A to Continental's complaint, so long as the electrical service line is used to supply power for purposes connected with the production of oil and gas produced from minerals underlying the subject tract or any governmentally approved production unit that includes the subject tract, subject to any claim for compensation that the Reems may have under N.D.C.C. ch. 38-11.1 or liability under other provisions of North Dakota statutory or common law if Continental exceeds its implied rights.

The renewed motion to dismiss or, in the alternative, for partial summary judgment brought by the Reems (Doc. No. 42) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 26th day of September, 2016.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court